UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORREY SELCK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VOLUNTEERS OF AMERICA, et al.,<br><br>　　　　Defendants. | No. 2:21–cv–1500–MCE–KJN PS<br><br>ORDER GRANTING IFP REQUEST & GRANTING LEAVE TO AMEND<br><br>(ECF Nos. 1-2) |

Plaintiff, who is proceeding without counsel in this action, requests leave to proceed in forma pauperis ("IFP").[1] (ECF No. 2.) See 28 U.S.C. § 1915 (authorizing the commencement of an action "without prepayment of fees or security" by a person who is unable to pay such fees). Plaintiff's affidavit makes the required financial showing, and so plaintiff's request is granted.

However, the determination that a plaintiff may proceed without payment of fees does not complete the inquiry. Under the IFP statute, the court must screen the complaint and dismiss any claims that are "frivolous or malicious," fail to state a claim on which relief may be granted, or seek monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2). Further, the federal court has an independent duty to ensure it has subject matter jurisdiction in the case. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004).

---

[1] Actions where a party proceeds without counsel are referred to a magistrate judge pursuant to E.D. Cal. L.R. 302(c)(21). See 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.

1

**Legal Standards**

A complaint fails to state a claim if it either lacks a cognizable legal theory or sufficient facts to allege a cognizable legal theory. Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, relief cannot be granted for a claim that lacks facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986).

In addition, the court must dismiss a case if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A federal district court generally has jurisdiction over a civil action when (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States" or (2) there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a).

Pleadings by self-represented litigants are liberally construed. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). Unless it is clear that no amendment can cure the defects of a complaint, a self-represented plaintiff proceeding IFP is ordinarily entitled to notice and an opportunity to amend before dismissal. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute as stated in Lopez, 203 F.3d 1122; Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984). Nevertheless, leave to amend need not be granted when further amendment

would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**Analysis**

In this complaint, plaintiff seeks to hold numerous parties liable for conduct occurring while he was incarcerated and on probation following a California state burglary conviction; he also seeks to challenge the conviction itself and the terms of his probation.  Plaintiff's complaint is difficult to understand, but the allegations can be grouped into three sets of claims—only one of which this court might have jurisdiction to hear, if plaintiff were to amend the complaint to add sufficient facts.  The court addresses each in turn.

### *1.  Claims Attacking Plaintiff's Conviction and Terms of Probation*

Plaintiff indicates that he is bringing this complaint under 42 U.S.C. § 1983 in part because "private entities use[d] police force and conspire[d] to incarcerate [him] maliciously for financial gain." (ECF No. 1 at 3, 5.)  Plaintiff states that from 2017 until 2018 he was "incarcerated unlawfully in Sacramento County Jail for Burglary and Assault." (Id. at 6, 10.)  He alleges that he was released on probation into a Veterans Treatment Court program, and that he was "extorted under duress" to "agree[] to remain homeless" and to allow conservatorship proceedings for his mother to go forward *ex parte* until his treatment was completed.  (Id. at 6-7; see id. at 5 (alleging that he was "disallowed to make income as a broker").)  Plaintiff states that he "is appealing under Rule 11 asserting that the criminal case held on probationary terms is baseless, and the plea is to be withdrawn." (Id. at 5.)  In the conclusion section of the complaint, plaintiff requests that "all charges be vacated . . . from County records," and he makes a passing reference to habeas corpus.  (Id. at 13, 14.)  Plaintiff's IFP application indicates that at the time of filing he was still on "probation under uncon[s]cionable terms." (ECF No. 2 at 1.)

A section 1983 claim is not the proper vehicle for challenging plaintiff's state court conviction or the terms of his ensuing probation.  A petition for habeas corpus is the sole means of attacking the validity of one's conviction or continued confinement.  Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973); Young v. Kenny, 907 F.2d 874, 875 (9th Cir. 1990).  A civil rights complaint that in effect seeks habeas relief is subject to dismissal without prejudice.  See Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995).

The court notes that, on the same day plaintiff filed this complaint, he also filed a petition for habeas corpus based on the same allegations asserted here, and that petition is currently pending before another judge. (Selck v. County of Sacramento, No. 2:21-cv-01499-JAM-DMC (E.D. Cal.), petition filed 8/20/2021.[2]) So long as plaintiff remains on probation, he is deemed to be "in custody" for purposes of seeking habeas relief under 28 U.S.C. § 2254. See Jones v. Cunningham, 371 U.S. 236, 242-43 (1963); Chaker v. Crogan, 428 F.3d 1215, 1219 (9th Cir. 2005) (probation satisfies the "in custody" requirement). If plaintiff wishes to contest his conviction or terms of probation, he must do so through a habeas petition—not through this separate civil rights action.

Plaintiff also is presently barred from seeking monetary damages for his allegedly unlawful conviction and sentence in this case. Under Supreme Court precedent, "a state prisoner cannot recover damages in a § 1983 suit if a judgment in favor of the plaintiff 'would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006) (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)).

Plaintiff repeatedly references wrongful arrest and malicious prosecution claims, both of which require proving a lack of probable cause. Thus, plaintiff's success on these section 1983 claims would necessarily imply the invalidity of his underlying burglary conviction. See Guerrero, 442 F.3d at 703-04 (holding that claims of wrongful arrest and malicious prosecution were Heck-barred). There is no suggestion that plaintiff has had his state court conviction overturned or otherwise invalidated. If at some point plaintiff succeeds in having his conviction invalidated or overturned, he is free to raise his constitutional claims in a new civil rights action. At present, however, plaintiff cannot assert section 1983 claims for damages arising from his arrest, conviction, or sentence in the state burglary matter.

///

---

[2] On October 27, 2021, the magistrate judge issued findings and recommendations to dismiss the petition, without prejudice, for provide a complete application to proceed in forma pauperis. (No. 2:21-cv-01499, ECF No. 9.)

### 2. Claims Regarding Mother's Conservatorship

The next set of allegations have to do with actions allegedly taken by various parties in connection with conservatorship proceedings for plaintiff's mother in Sacramento County probate court. Plaintiff alleges that "County Officers in Veteran's Court under VOA delegation[] attempted to bid and purchase plaintiff's home during probation," "withheld [his] mother from deeding property to plaintiff," and prevented his mother from leaving a care facility. (ECF No. 1 at 5.) Further, plaintiff says that staff members of the Volunteers of America ("VOA") and unspecified County officers "converted real property from plaintiff's family in probate court." (Id. at 6 (alleging sale of home at auction).) Plaintiff adds alarming allegations that his mother was "unlawfully sedated" and eventually "unlawfully euthanized" while plaintiff was "detained from enforcing family advanced directives to keep [his] mother alive." (Id.) Plaintiff claims that "[p]robate officers" held funeral ceremonies without plaintiff being contacted about his mother's terminal condition to "expedite death and liquidate plaintiff's estate." (Id.) He alleges that VOA staff member defendants Kia Phillips and Karl Williams tried to "thwart [him] from retrieving [the] probate estate and control of [his] mother's conservatorship." (Id. at 7.) As one of plaintiff's many requests for relief, he states that he is "seeking estate retrieval from VOA and County Probate courts." (Id. at 13.)

This complaint is the latest in a long series of plaintiff's lawsuits regarding his mother's conservatorship, her medical treatment, and the disposition of her assets. (See Nos. 2:18-cv-02447-JAM-EFB, 2:19-cv-00489-KJM-AC, 2:19-cv-00341-JAM-EFB, 2:19-cv-00935-JAM-EFB; 2:19-cv-00952-JAM-EFB.) Each of these prior cases was dismissed either for failure to allege sufficient facts to state a claim, or for lack of subject matter jurisdiction. This complaint also fails to establish the court's subject matter jurisdiction over these claims.

First, to the extent plaintiff is trying to contest the rulings of the state court in his mother's conservatorship case, the claims are barred by the Rooker-Feldman doctrine. As was explained in one of plaintiff's prior cases, this doctrine "bars jurisdiction in federal district court if the exact claims raised in a state court case are raised in the subsequent federal case, or if the claims presented to the district court are 'inextricably intertwined' with the state court's denial of relief."

Selck v. Cty. of Sacramento, No. 2:18-CV-2447-JAM-EFB-PS, 2019 WL 4259753, at *3 (E.D. Cal. Sept. 6, 2019) (quoting Bianchi v. Rylaarsdam, 334 F.3d 895, 898-99 (9th Cir. 2003)), report and recommendation adopted, 2019 WL 5102152, appeal dismissed as frivolous, No. 19-17237, 2020 WL 2126708 (9th Cir. Mar. 31, 2020). Although the probate court proceedings appear to have progressed further than when plaintiff last sued, he remains equally barred from seeking to modify the probate court's rulings through a "de facto appeal" to this court. See Carmona v. Carmona, 603 F.3d 1041, 1050 (9th Cir. 2010) (discussing Rooker-Feldman doctrine bar against "suits brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

Second, even assuming plaintiff is not trying to set aside the probate court's decisions, the court at present lacks jurisdiction over any state law claims—such as conversion, wrongful death, or other tort claims plaintiff might be asserting—against the named defendants because their citizenships are not alleged to be diverse from plaintiff's own. To invoke the court's diversity jurisdiction, a plaintiff must specifically allege the diverse citizenship of all parties, and that the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a); Bautista v. Pan American World Airlines, Inc., 828 F.2d 546, 552 (9th Cir. 1987). According to the complaint, plaintiff resides in Sacramento, California, as do all of the individuals named as defendants. (ECF No. 1 at 2-3.) Defendant County of Sacramento is also a California citizen for purposes of diversity jurisdiction. See Moor v. Alameda County, 411 U.S. 693, 718 (1973) ("[F]or purposes of diversity of citizenship, political subdivisions are citizens of their respective States."). Accordingly, there is no diversity of citizenship.

Thus, the only way the court could have jurisdiction over plaintiff's purported state law claims is if they are sufficiently related to a cognizable federal claim so as to be "part of the same case or controversy." 28 U.S.C. § 1367(a); Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004) (supplemental jurisdiction requires that a state law claim share a "common nucleus of operative fact" with federal claims).

In order to invoke supplemental jurisdiction here, plaintiff must first have a cognizable

claim for relief under federal law—something the present complaint lacks. The only cognizable federal claim plaintiff identifies is under section 1983, which "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

As to the first element, plaintiff fails to identify what federal right of his was violated. The right identified must be personal to plaintiff, as he cannot litigate the rights of other persons. As to the second element, plaintiff does not clearly identify which defendants he believes committed which violations of a federally protected right; however, at least some allegations are directed at private parties who are not employees of the state. Conduct by private individuals or entities is generally not actionable under section 1983. See Gomez v. Toledo, 446 U.S. 635, 640 (1980) (a private individual generally does not act under color of state law). Conduct by private individuals or entities is only actionable under section 1983 if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (cleaned up). Plaintiff's allegations against the VOA—a private non-profit organization—and its staff members do not suggest that these actors' conduct could be fairly treated as conduct of the state itself. See Franklin v. Fox, 312 F.3d 423, 445 (9th Cir. 2002) (outlining four potential circumstances in which private action can amount to state action for purposes of § 1983). Accordingly, any section 1983 claim cannot lie against these private parties.

If plaintiff wishes instead to assert section 1983 claims against the County or County officials, he must identify what constitutional provision has been violated and explain how each government actor caused the alleged constitutional deprivation. An officer "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or

reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).  The causation inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis added). The current complaint lacks sufficient factual detail to state a claim against any individual County officials.  If plaintiff elects to amend his section 1983 claims against any County officials, he must state particular facts about that official's actions and connect them to the constitutional deprivation alleged (i.e., due process, illegal taking, etc.).  Failure to do so will result in a recommendation to dismiss the section 1983 claims, likely without further leave to amend.

To proceed under section 1983 against the County, itself, plaintiff must allege that his constitutional injury was caused by employees acting pursuant to a County policy or custom. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008).  At present, the complaint merely names the County of Sacramento as a defendant in the caption of the complaint without explaining why he believes the County should be liable.

The only other federal laws plaintiff cites are sections of the federal criminal code, found in Title 18.  (ECF No. 1 at 11-13.)  However, plaintiff, as a private citizen, has no authority to bring claims under criminal statutes.  See Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action for violation of criminal statutes).

### 3. Claims Regarding Financial Fraud and Suspension of Veteran Benefits

The final set of allegations relate to claims that various individuals forged checks from plaintiff's bank accounts, filed a false insurance claim, and re-routed his veterans' benefits checks while plaintiff was incarcerated and on probation.  Plaintiff alleges that his personal bank accounts "were in fact under the control of VOA staff while [he] was incarcerated" and that "VOA staff [were] involved in forging [his] broker checks and defrauding veteran [plaintiff] from benefits while on probation based on damaged credit reports caused by VOA HUD VASH Care

////

Home contractors."³ (ECF No. 1 at 5.) Plaintiff says that the "VOA HUD VASH care facilities knowingly deposited checks from [his] commercial broker's accounts" and personal accounts, and misreported to the County VA and other government agencies that plaintiff lived at the address where the checks were redirected and cashed. (Id.) The director of the HUD VASH care facility at the address where the checks were re-routed is defendant Herbert Haines, who defendant describes as a "VOA HUD VASH Housing Contractor." (Id. at 3, 5, 7.) According to the complaint and an attached Sacramento police report, Haines collected plaintiff's VA disability and retirement checks and conspired with others to file a false Nationwide Insurance claim. (Id. at 10, 16.)

In a similar vein, plaintiff alleges that when he later moved to another VOA HUD VASH facility, a WoodSpring Suites hotel, individuals associated with defendant VOA staff members Williams and Phillips entered his room and stole money and checks from his commercial broker accounts. (Id. at 7-8.) He goes on to describe various sorts of "prostitution" and "drug deals" at WoodSpring Suites allegedly tangentially involving Williams and Phillips; and he complains that his veteran-benefit housing voucher was suspended or revoked, based on planted evidence and allegedly false statements by defendant Phillips. (Id. at 8-9, 13.) Plaintiff is now "requesting all property stolen by VOA staff be returned." (Id. at 13.) He also requests that the Department of Veterans Affairs "investigate all criminal acts that led to veteran's benefits and housing vouchers to cease." (Id.)

As with the conservatorship claims discussed in the previous section, whatever financial fraud and theft claims plaintiff may be asserting arise purely under state law and are directed solely at private individuals. Therefore, the court lacks jurisdiction over these claims unless they are between completely diverse parties or are sufficiently related to a federal claim so as to fall within the court's supplemental jurisdiction. Once again, all of the defendants implicated in the financial fraud claims share the same state of residency as plaintiff, so there can be no diversity

---

³ The HUD-Veterans Affairs Supportive Housing (HUD-VASH) program combines HUD's Housing Choice Voucher rental assistance for homeless veterans with case management and clinical services provided by the Department of Veterans Affairs.

jurisdiction; and plaintiff does not adequately state a cognizable federal claim to invoke supplemental jurisdiction.

Finally, to the extent plaintiff is attempting to appeal the termination of some form of his veterans' benefits, "judicial review of claims related to the provision of veterans' benefits" lies exclusively with the United States Court of Appeals for Veterans Claims and then with the Court of Appeals for the Federal Circuit.  Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1016 (9th Cir. 2012) (citing 38 U.S.C. §§ 511, 7252, 7292).  This court lacks jurisdiction to hear cases related to the provision of VA benefits.  Id. at 1023; 38 U.S.C. § 511(a) (VA Secretary's benefits decisions "may not be reviewed . . . by any court," subject to the exception permitting appeal to the Court of Veterans Claims).

**Leave to Amend**

In light of plaintiff's pro se status, and because it is at least conceivable that plaintiff could allege additional facts to potentially state a claim for relief against Sacramento County or its officials, the court grants plaintiff an opportunity to amend the complaint.  See Lopez, 203 F.3d at 1130 ("leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect") (cleaned up).

To summarize, plaintiff cannot proceed with any state law claims against the private individuals currently named (because they, like plaintiff, are citizens of California), unless the amended complaint shows that such claims share a common set of facts with a valid federal claim.  The court grants plaintiff this opportunity to amend the complaint to attempt to state a valid federal claim that meets the standards described above.

If plaintiff elects to file an amended complaint, this new pleading shall be captioned as the "First Amended Complaint" and must set forth each of plaintiff's claims in separate sections clearly identifying which defendant(s) are allegedly at fault for each claim (for example: Claim I against defendants X, Y, and Z; Claim II against defendants R and S, etc.).  Each claim must clearly identify what legal cause of action is being asserted; and within each claim, plaintiff must succinctly specify who did what, when the events occurred, and how plaintiff was harmed by the alleged conduct.

Plaintiff is informed that the court cannot refer to a prior complaint or other filing in order to make plaintiff's first amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint, and once the first amended complaint is filed, the original complaint no longer serves any function in the case.

Finally, nothing in this order requires plaintiff to file a first amended complaint.  If plaintiff determines that he is unable to amend his complaint in compliance with the court's order, he may alternatively file a notice of voluntary dismissal of his claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that

1. Plaintiff's request to proceed in forma pauperis (ECF No. 2) is GRANTED;
2. Within **30 days** of this order, plaintiff shall file either (a) a first amended complaint in accordance with this order, or (b) a notice of voluntary dismissal of the action; and
3. Failure to file either a first amended complaint or a notice of voluntary dismissal by this deadline may result in the imposition of sanctions, including potential dismissal of the action with prejudice pursuant to Federal Rule of Civil Procedure 41(b).

IT IS SO ORDERED.

Dated:  November 12, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

selc.1500